IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MEGHAN LAVIGNE, an individual,<br><br>         Plaintiff,<br>vs.<br><br>WAWONA PACKING CO, LLC, a California limited liability company,<br><br>         Defendant. | CASE NO.:<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S COMPLAINT

COMES NOW, Plaintiff, Meghan LaVigne, who, by and through her attorneys of record, William D. Marler (*pending admission*) and Michael G. Heilmann, alleges upon information and belief as follows:

## PARTIES

1. Plaintiff Meghan LaVigne is a resident of Fowlerville, Livingston County, Michigan. Plaintiff resides within the jurisdiction of this Court and is a citizen of the State of Michigan.

2. Defendant Wawona Packing Co., LLC (hereinafter "Wawona"), is a California limited liability company with its headquarters located at 7108 N. Fresno Street, Ste. 450, Fresno, California 93720. Upon belief, the sole member of Wawona Packing Co., LLC, is Daniel Gerawan, an individual who resides in California. Therefore, Defendant Wawona is a citizen of the State of California.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because Defendant has certain minimum contacts with the State of Michigan such that maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

4. Venue in the United States District Court for the Eastern District of Michigan, Southern division, is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims and causes action occurred in this judicial district, and because Defendant is subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## GENERAL ALLEGATIONS

**The 2020 *Salmonella* Outbreak linked to Wawona Peaches**

5. As of October 16, 2020, the Centers for Disease Control (CDC), public health and regulatory officials in several states, Food and Drug Administration (FDA), and the Public Health Agency of Canada investigated a multistate outbreak of *Salmonella* Enteritidis infections.

6. Public health investigators used the PulseNet system to identify illnesses that were part of this outbreak. PulseNet is the national subtyping network of public health and food regulatory agency laboratories coordinated by CDC.

7. DNA fingerprinting is performed on *Salmonella* bacteria isolated from ill people by using a standardized laboratory and data analysis method called whole genome sequencing (WGS).

8. CDC PulseNet manages a national database of these sequences that are used to identify possible outbreaks. WGS gives investigators detailed information about the bacteria causing illness.

9. In this investigation, WGS showed that bacteria isolated from ill people were closely related genetically. This means that people in this outbreak were likely to share a common source of infection.

10. A total of 101 people infected with the outbreak strain of *Salmonella* Enteritidis were reported from 17 states.

11. Illnesses started on dates ranging from June 29, 2020, to August 27, 2020. Ill people ranged in age from 1 to 92 years, with a median age of 43. Sixty-four percent of ill people were female. Of 90 ill people with available information, 28 hospitalizations were reported. No deaths were reported.

12. Whole genome sequencing analysis showed that an outbreak of *Salmonella* Enteritidis infections in Canada was related genetically to this outbreak in the United States. This means that people in both outbreaks were likely to share a common source of infection.

13. Epidemiologic and traceback evidence indicated that peaches packed or supplied by Prima Wawona or Wawona Packing Company were the likely source of this outbreak.

14. In interviews, ill people answered questions about the foods they ate and other exposures in the week before they became ill. Of 62 people with information, 50 (81%) reported eating fresh peaches in the week before their illness started. This percentage was significantly higher than results from a survey of healthy people in which 20% reported eating peaches in the week before they were interviewed.

15. Of the 40 people who reported information on how the peaches were packaged, 25 (63%) reported buying loose peaches and the remaining 15 reported buying pre-bagged peaches.

16. The FDA and regulatory officials in several states collected records from grocery stores where ill people reported buying peaches. These records showed that loose and bagged peaches distributed by Wawona Packing Company, LLC, were sold at multiple grocery stores where ill people bought peaches.

17. On August 22, 2020, Wawona recalled bagged and bulk, or loose, peaches that they supplied to retailers nationwide. As of October 16, 2020, this outbreak appears to be over.

**The *Salmonella* Bacterium**

18. *Salmonella* is an enteric bacterium, which means that it lives in the intestinal tracts of humans and other animals. *Salmonella* bacteria are usually transmitted to humans by eating foods contaminated with human or animal feces. Contaminated foods usually look and smell normal. Contaminated foods are often of animal origin, but all foods, including vegetables, may become contaminated. An infected food handler who neglects to wash his or her hands with soap and warm water after using the bathroom may also contaminate food.

19. Once in the lumen of the small intestine, the bacteria penetrate the epithelium, multiply, and enter the blood within 6-72 hours. As few as 15-20 cells of *Salmonella* bacteria can cause salmonellosis or a more serious typhoid-like fever. Variables, such as the health and age of the host and virulence differences among the serotypes, affect the nature and extent of the illness. Infants, elderly, hospitalized, and immune suppressed persons are the populations that are most susceptible to disease and suffer the most severe symptoms.

20. The acute symptoms of *Salmonella* gastroenteritis include the sudden onset of nausea, abdominal cramping, and diarrhea lasting several days. The diarrhea often turns bloody. There is no real cure for *Salmonella* infection, except treatment of the symptoms. Persons with severe diarrhea may require rehydration, often with intravenous fluids.

21. Persons with diarrhea usually recover completely, although it may be several months before bowel habits return entirely to normal. A small number of persons who are infected with *Salmonella* will go on to develop pains in their joints, irritation of the eyes, and painful urination. This development is called Reiter's syndrome or reactive arthritis, and it can last for months or years, sometimes leading to chronic arthritis that is difficult to treat. Antibiotic treatment does not make a difference in whether the person later develops arthritis.

**Plaintiff's Injuries**

22. Plaintiff purchased Wawona/Prima peaches from Costco, located at 6700 Whitemore Lake Rd., in Brighton, Michigan, on June 27, 2020 and from Walmart, located at 2129 W. Houghton Lake Dr., in Houghton Lake, Michigan, on July 7, 2020.

23. Upon belief, these peaches were manufactured and distributed to Costco and Walmart by Defendant Wawona.

24. Plaintiff consumed these peaches over the days following each purchase, from approximately June 27 through July 10, 2020.

25. On July 12, 2020, Plaintiff experienced symptom onset of a *Salmonella* infection, including nausea, diarrhea, abdominal cramps, fever, muscle aches, fatigue, and headache.

26. On or about July 15, 2020, Plaintiff's diarrhea became bloody, which prompted her to see medical attention at the University of Michigan Medical Center, located at 1500 E. Medical Center Dr, in Ann Arbor, Michigan. Plaintiff was 32 weeks pregnant at the time and admitted to

the labor and delivery ward, where she remained hospitalized until the following day.

27. A stool sample collected on July 17, 2020, tested positive at the University of Michigan hospital laboratory. Further testing at the Michigan State laboratory determined the serotype to be *Salmonella* Enteritidis.

## CAUSES OF ACTION

## COUNT I - BREACH OF WARRANTY

28. The Plaintiff incorporates by reference and makes a part of this count each and every foregoing paragraph of this Complaint.

29. Defendant produced, distributed, and sold the contaminated food product that injured Plaintiff and caused her *Salmonella* infection. Defendant is, therefore, a manufacturer, distributor, and seller of an adulterated food product, and the adulterated food product reached Plaintiff without substantial change from the condition in which it was sold by Defendant.

30. Defendant is subject to liability to the Plaintiff for its breaches of express and implied warranties made to Plaintiff with respect to the food product sold to her, including the implied warranties of merchantability and of fitness for a particular use. Further, Defendant expressly warranted, through its sale of food to the public, and by the statements and conduct of its employees and agents, that the food product ultimately sold to Plaintiff was fit for human consumption, and not otherwise adulterated or injurious to health.

31. The food product sold by Defendant and ultimately consumed by Plaintiff, which product was contaminated with *Salmonella* and related filth and adulteration, would not pass without exception in the trade, and was thus in breach of the implied warranty of merchantability.

32. Plaintiff further alleges that the contaminated food sold by Defendant and consumed by Plaintiff was not fit for the uses and purposes intended by either Plaintiff or Defendant, i.e., human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

33. As a further direct and proximate result of the conduct of Defendants and its agents, servants, and/or employees as aforesaid, Plaintiff suffered a *Salmonella* infection and the adverse effects associated with the same, as described in previous paragraphs of this complaint.

34. As a further direct and proximate result of the conduct of Defendant and its agents, servants, and/or employees, Plaintiff was forced to endure great pain, suffering, and inconvenience and may endure the same in the future. She was forced to submit to medical care and may be forced to submit to the same in the future.

35. As a further direct and proximate result of the conduct of Defendant and its agents, servants, and/or employees, Plaintiff suffered an inability to perform the activities of daily living or some of them.

## COUNT II - NEGLIGENCE

36. Plaintiff incorporates by reference and makes a part of this Count each and every foregoing paragraph of this Complaint.

37. Defendant had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of the food product that injured Plaintiff, including the applicable provisions of the Federal Food, Drug and Cosmetic Act, and similar Michigan food and public health statutes, including without limitation the provisions of MCLA 289.5101 which prohibits the manufacture and sale of any food that is adulterated or otherwise injurious to health.

38. The food product that Defendant manufactured and sold, and that Plaintiff purchased and consumed, was adulterated within the meaning of the federal Food, Drug and Cosmetic Act, and similar Michigan statutes, because it contained a deleterious substance that rendered it injurious to health, i.e., *Salmonella* bacteria.

39. Defendant violated federal, state, and local food safety regulations by its manufacture and sale of adulterated food. These federal, state, and local food safety regulations are applicable here, and establish a positive and definite standard of care in the manufacture and sale of food. The violation of these regulations constitutes negligence as a matter of law.

40. Plaintiff is in the class of persons intended to be protected by these statutes and regulations, and Plaintiff was injured as the direct and proximate result of the Defendant's violation of applicable federal, state, and local food safety regulations.

41. Defendant was negligent in the manufacture, distribution, and sale of a food product that was adulterated with *Salmonella*, not fit for human consumption, and not reasonably safe because adequate warnings or instructions were not provided.

42. Once Defendant learned, or in the exercise of reasonable care should have learned, of the dangers associated with preparing and selling food, including, but not limited to, cross-contamination between foods, and the dangers associated with improperly cleaned or washed food, it had a duty to warn Plaintiff but failed to do so.

43. Defendant had a duty to use supplies and raw materials in producing its food products that were in compliance with applicable federal, state, and local laws, ordinances and regulations; that were from reliable sources; and that were clean, wholesome, free from adulteration, and fit for human consumption, but failed to do so, and therefore breached that duty.

44.     Defendant was negligent in the selection of its suppliers, or other agents or subcontractors, and failed to adequately supervise them, or provide them with adequate standards, and, as a result, produced and sold food that was adulterated with *Salmonella*.

45.     Defendant had a duty to properly supervise, train, and monitor its employees, or the employees of its agents or subcontractors, engaged in the preparation and sale of its food products, to ensure compliance with Defendant's operating standards and to ensure compliance with all applicable health regulations. Defendant failed to properly supervise, train, and monitor these employees engaged in the manufacture, preparation and delivery of the food product ultimately sold to Plaintiff and thus breached that duty.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a. Judgment for the Plaintiff against Defendant for just compensation in a fair and reasonable amount for the damages above set forth; and

b. Such additional and/or further relief, including interest, costs, and reasonable attorney fees, as this Court deems just and equitable.

**JURY TRIAL DEMANDED**

Respectfully submitted,

/s/ *Michael G. Heilmann*

Michael G. Heilmann
Michigan Bar No. P33034
23394 Goddard Road
Taylor, MI 48180
Telephone: (734) 307-3800
E-Fax: 866-270-8438
Email: mgh@dialaw.net


/s/ William D. Marler
William D. Marler (pending admission)
Washington State Bar No.: 17233
1012 First Avenue, Fifth Floor
Seattle, WA 98104
Telephone: (206) 346-1890
Fax: (206) 346-1898
Email: bmarler@marlerclark.com
**ATTORNEYS FOR PLAINTIFF**